UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN CROCKER, | : | PRISONER CASE NO. |
| Plaintiff, | : | 3:20-cv-1433 (JCH) |
| | : | |
| v. | : | |
| | : | |
| PETER JAMISON, | : | AUGUST 16, 2021 |
| Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT (Doc. No. 20)**

The plaintiff, Shawn Crocker ("Crocker"), brought this action asserting claims for deliberate indifference to health and safety and various First Amendment violations. After initial review, one claim remains, a claim that Dr. Jamison violated Crocker's right to equal protection of the laws in denying his request for eyeglasses from an outside provider. See Initial Review Order at 11 (Doc. No. 8). Before the court is the defendant's Motion for Summary Judgment. For the following reasons, the Motion is granted.

I.      STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Nick's Garage, 875 F.3d at 113-14 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law.

Anderson, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense." Giordano v. Market Am., Inc., 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" Robinson v. Concentra Health Servs., 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

II.     FACTS[1]

Crocker, who is African-American, was confined at Garner Correctional Institution from March 2018 until February 5, 2020, when he was transferred to Cheshire Correctional Institution. Defendant's Local Rule 56(a)1 Statement (Doc. No. 20-2) ¶¶ 1, 4 ("Def's. 56 Stmt").

During the relevant time period, Dr. Jamison was an optometrist employed by the Department of Correction to provide optometry services to inmates housed at Garner Correctional Institution, Cheshire Correctional Institution, and Manson Youth Institute. Id. ¶ 5. His duties included examining patients; diagnosing, managing, and treating eye diseases; determining the need for prescription eyeglasses; and ordering, repairing, and replacing state-issued eyeglasses. Id. ¶ 6.

Department of Correction policy permits inmates in the general population to have two pairs of eyeglasses at any time. Id. ¶ 7. Inmates entering the Department of Correction are permitted to retain their eyeglasses unless they pose a security concern. Id. ¶ 8. The determination whether an inmate may retain his eyeglasses is made by

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3.

Although Crocker was informed of the need to respond to the Motion for Summary Judgment and the contents of a proper response, see Notice to Self-Represented Litigant Concerning Mot. for Summ. J. (Doc. No. 20-3), Crocker has not provided the required citations and evidence. Accordingly, the defendant's facts are deemed admitted. See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

custodial staff; Dr. Jamieson is not involved. Id.

Inmates whose eyeglasses are confiscated upon admission and inmates otherwise needing eyeglasses are provided state-issued eyeglasses. Id. ¶ 9. If the eyeglasses are damaged, lost, or otherwise need repair, they can be sent to the medical unit where they are evaluated for repair or replacement. Id.

When Dr. Jamison first encountered Crocker in July 2018, Crocker had two pairs of state-issued eyeglasses. Id. ¶ 10. On July 11, 2018, Dr. Jamison saw Crocker in response to an inmate request stating that the frame had broken on one pair of his state-issued eyeglasses and needed to be replaced. Id. ¶ 11.

During the meeting, the only time Dr. Jamison met with him, Crocker said that one pair of his eyeglasses had a broken frame. Id. ¶ 12. Dr. Jamison confirmed that Crocker had two pairs of state-issued eyeglasses, both with tinted lenses. Id. ¶ 13. Dr. Jamison also recommended a complete eye exam, and Crocker agreed. Id. ¶ 14. The examination showed normal eye health and no need for a change in prescription. Id. ¶ 15. Dr. Jamison explained the results of the exam and told Crocker that his broken frame would be replaced in about a week, leaving him with two pairs of state-issued eyeglasses, both with tinted lenses. Id. ¶¶ 16-17. Dr. Jamison offered to have the frame updated to a newer version, but Crocker requested replacement of the existing frame. Id. ¶ 18. The broken frame was replaced on July 18, 2020, leaving Crocker with two pairs of state-issued eyeglasses in excellent condition. Id. ¶ 19.

In November 2018, Crocker submitted a request to have eyeglasses sent into the facility, listing the reason as exchange. Id. ¶ 20. Dr. Jamison conferred with his

supervisor, Nurse Supervisor DeSena. Id. ¶ 21. DeSena determined that Crocker did not meet the criteria listed in the Garner Correctional Institution Procedure for Requesting Eyeglasses or Contact Lenses and, based on her determination, Dr. Jamison denied the request. Id. Dr. Jamison cited the policy in his response and provided a copy to Crocker. Id. ¶ 22.

The policy lists four conditions when inmates may request to have eyeglasses sent into the facility: "[t]he eyeglasses are confiscated upon admission due to security concerns; [t]he inmate does not have his eyeglasses upon admission; [a] new prescription needs to be refilled; or [a]n existing pair needs to be repaired or replaced." Id. ¶ 23 (quotation marks omitted).

Dr. Jamison was aware that Crocker recently had one pair of his state-issued eyeglasses replaced, so he had two pairs of eyeglasses in excellent condition. Id. ¶ 25. Crocker said nothing in his request suggesting that either pair was lost, broken, or in need of repair. Id.

In January 2019, Crocker submitted a second request, stating the he wanted to have eyeglasses sent into the facility to replace a broken pair. Id. ¶ 26. On January 30, 2019, Dr. Jamison denied the request, stating that the broken eyeglasses should be sent to the medical unit for repair or replacement as required. Id. ¶ 27. Crocker did not send any eyeglasses to the medical unit for several months. Id. ¶ 29.

On April 10, 2019, Dr. Jamison received a broken pair of eyeglasses from Crocker. Id. ¶ 30. Dr. Jamison repaired the frames, but he could not deliver the eyeglasses to Crocker because the facility was on lockdown. Id. Instead, Dr. Jamison

gave the eyeglasses to nursing staff, who delivered them to Crocker.  Id. ¶¶ 30-31.

On July 23, 2019, Crocker submitted a request seeking to have his frames repaired.  Id. ¶ 32.  He did not ask to have eyeglasses sent into the facility.  Id. ¶ 33.  The following day, Dr. Jamison replaced two broken frames, leaving Crocker with two pairs of state-issued eyeglasses with new frames.  Id. ¶ 34.

On February 5, 2020, Crocker transferred to Cheshire Correctional Institution.  Id. ¶ 35.  On February 24, 2020, he submitted a request to have glasses sent into the facility, stating he wanted to exchange a broken pair.  Id. ¶ 36.  On March 9, 2020, Dr. Jamison denied the request and instructed Crocker to send the broken eyeglasses to the medical unit to determine if they needed to be repaired or replaced.  Id. ¶ 37.  Nurse Cruz, not Dr. Jamison, replaced this pair of eyeglasses.  Id. ¶ 38.

III.     DISCUSSION

The remaining claim in this case is for denial of equal protection of the laws based on Dr. Jamison's denial of Crocker's request to have glasses sent into the facility. "[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005) (emphasis and citations omitted).

To survive summary judgment, Crocker must present evidence showing "(1) that [he was] treated differently from other similarly situated individuals, and (2) that such

differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rodriguez v. Clinton, 357 F. App'x 355, 357 (2d Cir. 2009) (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation marks omitted); see also Nicholson v. Hannah, No. 3:20-cv-209(JAM), 2020 WL 3086022, at *5 (D. Conn. June 10, 2020) (using the same standard). Alternatively, Crocker could "pursue an 'equal protection claim under a theory of discriminatory application of the law, or under a theory of discriminatory motivation underlying a facially neutral policy of statute.'" Rodriguez, 357 F. App'x at 357 (quoting Pyke v. Cuomo, 258 F.3d 107, 108-09 (2d Cir. 2001). The key consideration in both claims is a showing that the plaintiff was treated differently from similarly situated persons. See, e.g., Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) ("[t]o prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.") (citation omitted).

Crocker alleges that he is African-American and was treated differently from white inmates. Thus, he bases his claim on racial discrimination. The court permitted the Equal Protection claim to proceed on initial review because Crocker alleged that requests from white prisoners in his housing unit and other housing units at Garner Correctional Institution and four white prisoners at Cheshire Correctional Institution to have eyeglasses sent into the facility were approved, while his requests were denied. The court considered the claim plausible, allowing Crocker to present the evidentiary

basis for his allegations through the discovery process.

Crocker has not met his burden. In opposition to the Motion for Summary Judgment, Crocker submits only his own Affidavit reiterating the allegations in the Complaint that white inmates were permitted to have eyeglasses sent into the facility. He identifies no white inmate who had two pairs of state-issued eyeglasses in good condition who was permitted by Dr. Jamison to have eyeglasses sent into the facility. Crocker states that he submitted a Freedom of Information Act request and was told that the information did not exist. See Pl.'s Reply to Def.'s Reply to Pl.'s Opp'n to Summ. J., Ex. 2.

Federal Rule of Civil Procedure 56(d) considers the situation when facts are not available to the nonmovant and specifies actions the court may take.[2] The court, however, will not make use of that provision here. Crocker states that he only submitted the Freedom of Information Act Request; he did not conduct any discovery. The court specifically directed the parties to conduct discovery pursuant to Federal Rules of Civil Procedure 26 through 37. See Initial Review Order, Doc. No. 8, at 12. As Crocker chose not to avail himself of these procedures, he is not entitled to special consideration by the court.

Crocker also argues that the court should assume that the inmates he referenced had two pairs of state-issues eyeglasses. At the summary judgment stage, it is

---

[2] Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Crocker's responsibility to submit evidence.  The court cannot assume the evidence exists.  In addition, even if the white inmates had two pairs of state-issued eyeglasses, there are reasons why they may have been permitted to have eyeglasses sent into the facility, such as a change in prescription.  An inmate whose prescription had changed would not be similarly situated to Crocker.

When the moving party does not carry the ultimate burden of persuasion on the claim, the moving party may obtain summary judgment by identifying the non-moving party's inability to prove each essential element of his claim.  See generally Celotex, 477 U.S. 317 (holding that if the moving party draws attention to the absence of support for an essential element of the non-moving party's claim, the court may grant summary judgment unless the non-moving party sets forth facts demonstrating the necessity of a trial); see also Anderson, 477 U.S. at 252 (holding that a scintilla of evidence is insufficient to satisfy the plaintiff's burden; to defeat summary judgment, the party with the burden of persuasion must set forth sufficient evidence to support a trial determination that the burden of persuasion is satisfied).  To defeat the Motion for Summary Judgment, Crocker was required to "come forward with some evidence from which a trier of fact could find that a similarly-situated individual of a different race would have been treated differently."  Heyliger v. Krygier, 335 F. Supp. 3d 482, 495 (W.D.N.Y. 2018).

Because Crocker has submitted no evidence other than his conclusory statements showing that similarly situated white inmates were treated differently, he has not demonstrated the existence of a genuine issue of material fact precluding summary

9

judgment.  The defendant's Motion for Summary Judgment is granted.  See <u>Harlan Associates v. Incorporated Vill. Of Mineola</u>, 273 F.3d 494, 499 n. 2 (2d Cir. 2001) ("a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met").

IV.     CONCLUSION

The defendant's Motion for Summary Judgment (Doc. No. 20) is granted.  The Clerk is directed to enter judgment for the defendant and close the case.

SO ORDERED.

Dated this 16th day of August 2021 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge